Counsel, you may proceed. Good morning. May it please the Court, Cara Hartzler for Federal Defenders for Mr. Lazaro Limon-Juvera. The District Court erred in excluding evidence of Mr. Limon's membership in the Tohono O'odham Tribe for three reasons. First, a very high percentage of Tohono O'odham are U.S. citizens, although a third of that percentage do not have proof of their citizenship. And this is relevant to the issue of whether Mr. Limon is a citizen. Second, the O'odham have traditionally been granted free passage rights, which is relevant to whether Mr. Limon was required to seek advance consent to return to the United States. First of all, Counsel, let me ask, my notes indicate that your client was released from prison on July 26. Am I correct about that? I am not aware of that. My understanding was that he was scheduled to be released in November. I have not checked since July, Your Honor. Well, is he incarcerated today or not? My understanding is he is. He is. That's my understanding. All right. But I can certainly check on that for the Court. Okay. The second question I have is, with respect to your Tohono O'odham argument, was that preserved below? Your Honor, we did preserve the issue that this membership in the Tohono O'odham Tribe went to the element of alienage. And so we did preserve it in that sense. There were certain nuances of that argument that I agree were not raised below. However, we believe that— Obviously, I'm concerned about waiver. Certainly. I understand that, Your Honor. What I would first point to is the fact that in the last three years, in at least four cases, this Court has very broadly construed the evidence that should be admitted that goes to the element of alienage. And when there's been a question of is this relevant or is this prejudicial, the Court has always erred in those four cases in saying, yes, it should be admitted. So we're basically asking the Court to construe this broadly. Well, even if it weren't waived and we were applying even a more generous standard of review, how is this probative on the citizenship? He has to be a citizen. How does membership in a tribe become equivalent to being a citizen of the United States? Especially a tribe that spans the border, includes members of the tribe who are in northern Mexico. We're not necessarily arguing that his membership makes him a de facto citizen. What we're arguing is that he should have been allowed to present evidence of his tribal membership. And the reason is this. Ninety-four percent of the Tohono O'odham are U.S. citizens. But one-third of that 94% don't have proof of their U.S. citizenship. This is a valid theory of defense as to why Mr. Limon might have been trying to illegally enter the United States, even though he was not an alien, even though he was a citizen. So is your focus on the form he checked in 2011 saying he was a citizen, that the trial judge excluded that, or does it extend broader at this point? That would be our third argument, Your Honor. So I'd be glad to move on to that. No, that's fine. Okay. So our first point is essentially that it's relevant and it should have been allowed in because the fact that he's a Tohono O'odham makes it more likely that he's actually a citizen than if he were not a Tohono O'odham. Now, what the district court did is it basically sort of pre-decided the issue. And it said, well, the government has allegedly the Mexican birth certificate, so I'm not going to let this in. But the error of that is that we still have the right to hold the government to its burden. Even if there is some sort of proof out there, we still have the right to make the government prove its case. But here the district court didn't allow us to present that evidence that would have held the government to its burden. I want to then move on to the third point that you're raising, Your Honor. And that is basically unclear. And this is an issue that clearly was preserved below. So if you don't believe that our first point wasn't preserved, this issue was. And this issue is basically that the vast majority of the evidence that the government submitted at trial and the vast majority of evidence going to alienage was Mr. Limón Rivera's own admissions of alienage. And one of those admissions, for instance, was submission to an immigration judge in 2005 that indeed he was an alien. Now, in 2011, he actually stated to an immigration judge, no, I am a citizen. But we weren't allowed to present that below. And the reason that's relevant is because when the government's entire case, almost, is made up of Mr. Limón's admissions of alienage, we should be allowed to present evidence that he said the opposite. And that goes to the consistency and the reliability of his admissions and whether that should be allowed to counter the evidence that the government is presenting to prove his admissions are enough to show alienage. So those are our basic two arguments that I would go with. I would then also say that if the court finds error on one of those issues, we believe that this is a structural error issue. And so prejudice is presumed, and the court should remand for a new trial. And the reason for that is because of this court's two decisions, one in Smith-Baltiher, which specifically dealt with alienage, and another, which is an en banc decision from this court several months ago in Frost v. Bainey, where we held that not being allowed to present evidence of your defense, or in that case, not even being allowed to argue it in closing, is structural error. So we would argue that this would require a remand. And if the court has no further questions at this point, I think I'd like to reserve the balance of my time. You may do so, counsel. Thank you. We'll hear from the government. Thank you. May it please the court, Christopher Alexander for the United States. Mr. Lamone raises two issues on appeal. The first issue concerns the exclusion of evidence by District Court Judge Battaglia. The second issue concerns whether the District Court properly enhanced his sentence as a result of this conviction for California vehicle code section 10-851, a problem that we actually don't have with the preceding case about the categorical analysis and whether the modified approach is applicable. Even the case that was recently decided, Duenas-Alvarez, which had a concurring opinion by Judge Reinhart, found that 10-851 is, in fact, a theft offense under the modified categorical approach. And in this case, we had conviction records that were comparable to the conviction records that were reviewed in Duenas-Alvarez in finding that that conviction was, in fact, a theft offense and aggravated felony. So in this case, the analysis should be equally applicable. But getting back to what is the first issue. Does Rendon figure at all in this issue? Rendon has figures not at all in this particular analysis. Regarding the first issue that was raised about the exclusion of evidence, the first issue that the court is going to have to address is what is the appropriate standard of freedom. The defense has argued that this is structural error. It's a constitutional error. The District Court excluded a defense. That's not what happened. What happened is the District Court actually applied something called the Federal Rules of Evidence, something that every litigant needs to comply with. And in this instance, there were two things that were presented to the District Court as far as what they wanted to admit. Now there's no argument about the fact that the United States produced, as discovery, his application for citizenship to the immigration judge in 2011 and attached to that application was the defendant's birth certificate. The defendant's birth certificate reflects that he was born in Mexico, that his parents were born in Mexico, and he was a Mexican citizen. That was produced to the defense. The defense then made a strategic decision. I take it that birth certificate is an exhibit in the trial? Your Honor, it was not an exhibit simply because one of the things that the defense argued is that the United States was trying to introduce cumulative evidence. So in order to limit the amount of evidence that we presented, what we presented was evidence that would be sufficient to sustain the conviction, but that would not, in fact, be cumulative. But didn't the trial judge assume at the Omnibus Conference that you were going to be introducing the birth certificate? Your Honor, I don't think that that was the case that the district court made that assumption. But what was stated clearly is that there was this birth certificate, and the defense never made any statement to the contrary that it didn't exist, simply because they had actually submitted it as a part of their package to the immigration judge. They had it. Now as far as the defense made a strategic decision as far as what evidence they were going to present at trial, they moved in limine to admit evidence of this Native American heritage. And what they argued, and I'm going to quote, is that the defendant was arguing that he had some records, some documentation to establish that he is Tohono O'odham from Mexico, not that he was from the United States, not that he had United States citizenship. Where are you citing from? What part of the record? That would be Excerpt of Record 218. Thank you. This was during the motion and limiting hearing. All right. And the district court judge then asked, what is it about this documentation that would give him citizenship? Specifically, he asked, what statute, what case law, what legal basis is there to say that that makes him a citizen or a non-alien for purposes of this litigation? And that's at Excerpt of Record 218 to 219. So what statute? What law? Limone provided none. During the course of the trial, Mr. Limone argued that he had applied for consent to reenter, and that's where the immigration judge's order came into play, saying that he had applied for consent to reenter. But again, that 2011 application had nothing to do with the element of consent to reenter the United States. He had been removed twice after the application to the immigration judge. Now, the order itself contained hearsay, namely the defendant's own statement about what he was claiming. And so that, in and of itself, would not have been admissible evidence. How did all the other certificates or information he completed come in as admissions of party opponent? Exactly. All right. Exactly. So as a district court judge, you obviously know the rules of evidence. Some days more than others. Exactly. So the defendant could not introduce his own statements, out-of-court statements, for the truth of the matter asserted, and that's what he was trying to do, and that was not proper, and the district court properly held that that was not appropriate. And I see that my time has expired. Please just take a moment. You're well over your time, counsel. Okay. Thank you very much. Ms. Hartzler, you have reserved some time. I apologize, Your Honor. I think I had a little bit more time. It was about four minutes. Thank you. It was. Thank you. Your Honor, I just want to start by addressing the last point, and that is this whole issue of, well, is this something that would have been admissible? For instance, the 2011 statement of citizenship, would this have been admissible? Now, under the federal rules of evidence, it's true, there may have been some hearsay issues, if it went to the truth of the matter asserted. But it didn't go to the truth of the matter asserted. What it went to was it was an issue of impeachment. We were essentially trying to use our client's assertion of citizenship as a way to impeach his prior admissions of alienage and question whether, in fact, they were going to go to the issue of the consistency and the reliability. And as the government acknowledges, it never presented the Mexican birth certificate. And so what we have is the situation of the government assuming that, well, we presented all of his admissions of alienage, and therefore that must be enough. But isn't the burden on your client to establish citizenship or not? Absolutely not, Your Honor. And in the immigration context, I agree it would be. But this is the criminal context. And, in fact, I'll read, Your Honor, a quote from Sandoval Gonzalez. It says, Lest there be any further doubt, we now clarify that a criminal defendant faces no burden whatsoever regarding the issue of derivative citizenship in a prosecution for an offense of which alienage is an element. And this court has said that over and over when the government comes and says, well, this should be sort of an affirmative defense. And on numerous occasions this court has always said in a criminal prosecution the burden is absolutely on the government to show that the person is an alien. What is the typical basis upon which the government shows alienage? Often they will show the person's admissions, as they did here. They will show past deportations. They may show a Mexican birth certificate, a Mexican identification card. That is the normal thing. So you're relying on the fact that his Mexican birth certificate, assuming it's valid, was never introduced into evidence and therefore is not part of the record and the government has failed in its burden. Absolutely. And, Your Honor, what we would point out is that if the government had introduced the Mexican birth certificate, we could have introduced evidence that Tohono O'odham birth records are not very reliable because most Tohono O'odham are born at home and there's not very good birth certificates, birth records. And then it would have been an issue for the jury to decide. It would have been a question of fact. That's what it should have been. Instead what happened here is that the district court basically cut our legs out from under us by not even allowing us to challenge the issue and the element of alienage. And that's where we believe that the district court's error really lied. If the government had presented the evidence, the birth certificate, then we could have gone from there. But as it was, we had no way to present a defense. If the court has no further questions, I believe I'll end. No further questions. Thank you, counsel. The case just argued will be submitted for decision.
judges: Gleason, O'SCANNLAIN, RAWLINSON